**SO ORDERED.**

**SIGNED June 25, 2013.**



**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

```
             UNITED STATES BANKRUPTCY COURT
             WESTERN DISTRICT OF LOUISIANA
                   LAFAYETTE DIVISION

IN RE:

GULF FLEET HOLDINGS, INC., ET AL          CASE NO. 10-50713

    Debtors                                Chapter 11
------------------------------------------------------------------
ALAN GOODMAN, TRUSTEE OF THE
GULF FLEET LIQUIDATING TRUST,

    Plaintiff

VERSUS                                     ADVERSARY NO. 12-05040

FERRO MANAGEMENT, INC.,

    Defendant
------------------------------------------------------------------
                       REASONS FOR DECISION
------------------------------------------------------------------
```

The present matters before the court are motions for summary judgment filed by the plaintiff, Alan Goodman as Trustee of the Gulf Fleet Liquidating Trust (the "Trustee") and the defendant, Ferro Management, Inc. The court took these motions under

advisement following a hearing. After considering the summary judgment record, the parties' arguments, and the relevant authorities, the court **GRANTS** the Trustee's motion for partial summary judgment as set forth below. The court **DENIES** Ferro's motion for summary judgment.

**JURISDICTION**

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Moreover, the court may enter final orders on the claims and defenses asserted in this case under Stern v. Marshall, ___U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). See First Choice Drywall, Inc. v. Presbitero (In re First Choice Drywall, Inc.), 2012 WL 4471570 (Bankr. N.D. Ill. Sept. 25, 2012)(bankruptcy court has the power to determine preference actions after Stern ); Olsen v. PG Design/Build, Inc. (In re Smeltzer Plumbing Sys., Inc.), 2011 WL 6176213 (Bankr. N.D. Ill. Dec. 12, 2011)(same); Nanodynamics, Inc. v. Rothstein (In re Nanodynamics, Inc.), 474 B.R. 422, 429 (Bankr. W.D.N.Y. 2012) (same); Appalachian Fuels, LLC v. Energy Coal Resources, Inc. (In re Appalachian Fuels, LLC), 472 B.R. 731, 744

-2-

(E.D. Ky. 2012) (same); In re Am. Hous. Found., 469 B.R. 257, 265 (Bankr. N.D. Tex. 2012) (same); In re DBSI, Inc., 467 B.R. 767, 773 (Bankr. D. Del. 2012) (same); West v. Freedom Medical, Inc. (In re Apex Long Term Acute Care-Katy, LP.), 465 B.R. 452, 463 (Bankr. S.D. Tex. 2011) (same); Burtch v. Huston (In re USDigital, Inc.), 461 B.R. 276, 285 (Bankr. D. Del. 2011) (same).

**BACKGROUND**

Gulf Fleet owned and operated a fleet of offshore and fast supply vessels that supported oil and gas exploration and production companies and other oilfield services companies. Gulf Fleet also operated an independent vessel brokerage business. Ferro is in the business of marine consulting and was hired by Gulf Fleet to provide services in connection with the construction of the *M/V Gulf Tiger* in 2010. Gulf Fleet had contracted with Thoma-Sea Shipbuilders, LLC to construct the *M/V Gulf Tiger* in July 2007. Gulf Fleet assigned its rights to the *M/V Gulf Tiger* construction contract to GF Tiger Acquisition (a subsidiary of Gulf Fleet's parent, H.I.G. Capital Management) in July 2008. The Trustee has alleged that, after the assignment, H.I.G.'s representatives at Gulf Fleet required Gulf Fleet to continue supporting the construction of the *M/V Gulf Tiger* even though Gulf Fleet no longer had an interest in the contract.

-3-

Gulf Fleet hired Ferro in March 2010.  Although the parties did not execute a written agreement, they agreed that Ferro would be paid $600.00 a day as well as expenses.  The parties further orally agreed that payment terms would be "net 15 days." (Affidavit of Davy Murrah ("Murrah Aff.") at ¶ 5.)  work performed by Ferro occurred solely within the ninety-day preference period, and represented the only transactions between Gulf Fleet and Ferro.  During the preference period, Ferro sent four invoices to Gulf Fleet totaling $32,500.00, and each of these invoices was paid by check:

| Invoice No. | Invoice Date | Invoice Amount | Date Received | Date Cleared |
|---|---|---|---|---|
| 2280 | 3/08/2010 | $6,650.00 | 3/15/2010 | 3/16/2010 |
| 2281 | 3/22/2010 | $8,450.00 | 4/19/2010 | 4/21/2010 |
| 2287 | 4/05/2010 | $8,450.00 | 4/14/2010 | 4/14/2010 |
| 2288 | 4/19/2010 | $8,950.00 | 5/07/2010 | 5/10/2010 |

Gulf Fleet and certain of its affiliates filed for voluntary relief under Chapter 11 of the Bankruptcy Code on May 14, 2010.  The Gulf Fleet Liquidating Trust (the "Trust") was ultimately created pursuant to a confirmed plan, and the Trustee was appointed to pursue certain claims assigned to the Trust.  The Trustee commenced the present action against Ferro, and seeks avoidance of certain transfers under 11 U.S.C. § 547, 548, and 550.  Ferro filed a motion for summary judgment with respect to its "ordinary course"

-4-

and "new value" defenses. The Trustee filed a motion for partial summary judgment with respect to his case-in-chief under section 547 and certain other defenses asserted by Ferro.

**DISCUSSION**

**A.  Summary Judgment Standard.**

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P 56(a). The purpose of summary judgment is to pierce the pleadings, to assess the proof, and to determine whether there is a genuine need for trial. See Matsushita Electric Industries v. Zenith Radio Corp. 475 U.S. 574, 587 (1986). Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). If the movant bears the burden of persuasion at trial on a claim or defense addressed in the motion for summary judgment, the movant must establish that there is no genuine dispute of material fact as to those claims or defenses. To satisfy this burden, the movant must come forward with competent summary judgment evidence conclusively establishing that no reasonable trier of fact could find other than for the moving party. See Calderone v. United States, 799 F. 2d 254, 259 (6th Cir. 1986). To avoid summary judgment, the non-movant must

-5-

then come forward with evidence showing that there is a genuine dispute of material fact.

If the non-moving party has the burden of persuasion at trial with respect to an issue addressed in the motion for summary judgment, the moving party may satisfy its initial burden by either (1) demonstrating affirmatively that there is no triable issue of fact as to each element of the non-moving party's affirmative defenses or claims, or (2) "showing" that the non-moving party cannot present evidence sufficient to satisfy the essential elements of its defenses or claims and thus cannot meet its burden of persuasion at trial. Celotex Corp., 477 U.S. at 324-326. If the moving party makes a showing that there is "no evidence" to support the non-moving party's claims or defenses, the non-moving party must come forward with "substantial" evidence showing a genuine dispute of material fact with respect to each essential element of its affirmative defenses or claims. Id. Substantial evidence for purposes of defeating summary judgment is evidence sufficient to support a jury verdict in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-252 (1986). Under this standard, the non-movant cannot rely on unsupported assertions or arguments, but must submit sufficiently probative evidence supporting its claims or defenses. Even if the burden shifts to the non-moving party, the movant still retains the

ultimate burden of persuasion on the motion for summary judgment. Celotex Corp., 477 U.S. at 330-331.

**B.   The Trustee's Preference Claim**.

The Trustee has the burden of persuasion at trial with respect to each of the elements of a preference claim under section 547(b). Accordingly, in order to prevail on summary judgment, the Trustee must establish that there is no genuine dispute of material fact with respect to each element of his preference claim, and that he is entitled to judgment as a matter of law. Section 547(b) provides that a trustee may avoid any transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;

(2) for or an account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made–

   (A) on or within 90 days before the date of the filing of the petition; or

   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if–

   (A) the case were a case under chapter 7 of this title;

-7-

>    (B)  the transfer had not been made; and
>
>    (C)  such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)

The summary judgment record establishes the first three elements of the Trustee's preference claim as a matter of law. Gulf Fleet's four payments to Ferro represented a transfer of Gulf Fleet's property to a creditor on account of an antecedent debt. Specifically, the debt was created when Ferro performed services in connection with the construction of *M/V Gulf Tiger* and Gulf Fleet became obligated to pay for the services. See Laws v. United Missouri Bank, 98 F.3d 1047, 1049-51 (8th Cir. 1996). The Trustee can also rely on the presumption of insolvency during the ninety-day reach-back period. See 11 U.S.C. § 547(f). Ferro's response does not reveal any genuine dispute of material fact with respect to these elements of the Trustee's claim.

To prevail on summary judgment, the Trustee must also establish that the four payments to Ferro fell within the ninety-day period prior to the filing of the bankruptcy petition. The four checks to Ferro cleared from March 16, 2010 through May 10, 2010. Accordingly, the transfers at issue occurred during the ninety-day preference period. See Barnhill v. Johnson, 503 U.S. 393 (1992); In re AMWC, Inc., 94 B.R. 428 (Bankr. N.D. Tex. 1988).

-8-

The Trustee must also establish that Ferro received more than it would have received in a hypothetical Chapter 7 liquidation as a result of these two payments. 11 U.S.C. § 547(b)(5). This requirement "simply carries out 'the common sense notion that a creditor need not return a sum received from the debtor prior to bankruptcy if the creditor is no better off *vis-a-vis* the other creditors of the bankruptcy estate than he or should would have been had the creditor waited for liquidation and distribution of the assets of the estate.'" In re Hager, 109 F.3d 201, 210 (4th Cir. 1997) (quoting In re Virginia-Carolina Finance Corp., 954 F.2d 193, 198-99 (4th Cir. 1992)). Here, it is undisputed that Ferro was not secured and that the four payments to Ferro allowed it to receive more than it would have received in a hypothetical Chapter 7 liquidation.

In sum, the Trustee has met his burden of showing that there is no genuine dispute of material fact with respect to each of the essential elements of this preference claim under section 547(b).

**C. The Ordinary Course Defense.**

Ferro moves for summary judgment on its defense that the four payments it received from Gulf Fleet fall within the "ordinary course" exception of 11 U.S.C. § 547(c)(2). Section 547(c)(2) provides that an otherwise avoidable transfer is not subject to avoidance:

-9-

> to the extent that such transfer was in payment of a debt
> incurred by the debtor in the ordinary course of business
> or financial affairs of the debtor and the transferee,
> and such transfer was--
>
> (A) made in the ordinary course of business or financial
> affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms ....

11 U.S.C. § 547(c)(2). The ordinary course exception is an affirmative defense, so Ferro has the burden of persuasion as to each element of the defense. In re Gulf City Seafoods, 296 F.3d 363, 368 n.5 (5th Cir. 2002). With respect to summary judgment, Ferro must establish each essential element of the defense as a matter of law.

The Trustee contends that Ferro cannot establish that the debts at issue were "incurred in the ordinary course of the business or financial affairs of the debtor." 11 U.S.C. § 547(c)(2). Specifically, the Trustee contends that Gulf Fleet's engagement of Ferro was atypical because Ferro provided services in connection with the construction of a vessel in which Gulf Fleet no longer had any direct ownership interest. According to the Trustee, Gulf Fleet's largest shareholder required Gulf Fleet to assign its interest in the *M/V Gulf Tiger* to an affiliated entity and to continue providing over $1 million in resources to support the construction of the vessel after the assignment. The Trustee contends that the Ferro engagement was part of the support provided

-10-

by Gulf Fleet and that Gulf Fleet was never reimbursed for the payments it made to Ferro that solely benefitted an affiliate of Gulf Fleet's largest shareholder. The Trustee concedes that Gulf Fleet had previously acquired construction-related consulting services for vessels it owned, but never under the circumstances of the Ferro engagement.

Viewing the summary judgment record as a whole, these facts do not defeat Ferro's ordinary course defense as a matter of law. When the details of the Ferro transaction are compared to prior transactions, it may well be that the Ferro debt was incurred in the ordinary course despite the unique circumstances of the transaction. However, the circumstances surrounding the Ferro engagement create genuine questions of material fact with respect to this threshold element of the ordinary course defense that preclude summary judgment in favor of Ferro. Accordingly, the court need not address the remaining elements of Ferro's ordinary course defense.

**D.  The New Value Defense.**

Ferro further contends that even if the Trustee has satisfied each of the elements of a preference claim, a portion of the four payments are subject to the "new value" defenses of 11 U.S.C. § 547(c)(4). Section 547(c)(4)provides an exception for transfers "to or for the benefit of a creditor, to the extent that, after

-11-

such transfer, such creditor gave new value to or for the benefit of the debtor – (A) not secured by an otherwise unavoidable security interest; and(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." "New value" is defined as "money or money's worth and goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under applicable law...." 11 U.S.C. § 547(a)(2). In other words, a creditor must establish that it provided the debtor with "something new that is of tangible value." In re Martin Wright Electric Co., 2008 WL 114926 at *9 (Bankr. W.D. Tex. Jan. 9, 2008) (citing In re Fuel Oil Supply & Terminaling, Inc., 837 F. 2d 224, 230 (5th Cir. 1988)).

Ferro argues that it provided approximately $16,250.00 of services after the preference-period transfers challenged by the Trustee and that the amount of any preferential payments should be reduced by the value of this new value provided to Gulf Fleet. (Ferro Memorandum in Opposition to Summary Judgment at 14 [Dkt. No. 29].) The Trustee responds that the new value defense does not apply because Gulf Fleet received no new value from the services provided by Ferro because the services solely benefitted an affiliate of Gulf Fleet's majority owner. The court agrees that

-12-

these facts create genuine questions of material fact with respect to Ferro's new value defense that preclude summary judgment in favor of Ferro.

**E.   Ferro's Additional Defenses**

The Trustee also moves for summary judgment on Ferro's remaining affirmative defenses on the grounds that there is no evidence to support these defenses. Specifically, the Trustee challenges Ferro's First Affirmative Defense (failure to state a claim), Third Affirmative Defense (contemporaneous exchange for new value under section 547(c)(1)), Fifth Affirmative Defense (solvency), Sixth Affirmative Defense (waiver and estoppel), Seventh Affirmative Defense (laches), Eighth Affirmative Defense (standing), Ninth Affirmative Defense (estoppel and res judicata), Twelfth Affirmative Defense (assumption of contract), Fifteenth Affirmative Defense (conduit), Seventeenth Affirmative Defense (statute of limitations), and Eighteenth Affirmative Defense (other defenses).  The Trustee has met his burden of "showing" that Ferro cannot present evidence sufficient to satisfy the essential elements of these defenses. Because Ferro has not come forward with summary judgment evidence creating any genuine questions of material fact with respect to the essential elements of these defenses, the court grants the Trustee summary judgment with respect to these remaining affirmative defenses.

-13-

## CONCLUSION

For the foregoing reasons, the court GRANTS the Trustee partial summary judgment with respect to the elements of his section 547(b) preference claim and the affirmative defenses identified herein. The court DENIES Ferro's motion for summary judgment. The parties shall prepare and submit orders on their respective motions that reflect the court's rulings herein.

###